# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| FLORIDA ASSOCIATION OF REALTORS®, and<br><br>R.W. CALDWELL INC.,<br><br>     *Plaintiffs*,<br><br>v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION, and<br><br>ROCHELLE P. WALENSKY, in her official capacity as Director of the Centers for Disease Control and Prevention, and<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, and<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, and<br><br>UNITED STATES DEPARTMENT OF JUSTICE, and<br><br>MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,<br><br>     *Defendants*. | Civil Case No.:  8:21-cv-1196<br><br>**COMPLAINT WITH DECLARATORY AND INJUNCTIVE RELIEF REQUESTED** |

Plaintiffs Florida Association of Realtors® ("Florida Realtors") and R.W.

Caldwell Inc. ("R.W. Caldwell"), by and through undersigned counsel, bring this

Complaint for relief and redress from the extraordinary harm created by an unprecedented and unlawful federal administrative order that, since September 4, 2020, has imposed a national moratorium on evictions from residential rental properties.  In support, Plaintiffs allege:

### Introduction

1.    The Covid-19 pandemic has shown America's resiliency.  The nation's resources have been mobilized.  Health care workers have been trained to identify and treat the virus.  Protective gear has been manufactured and distributed. Vaccines have been developed.  The American people have adapted and pressed forward with daily life.

2.    Some government measures, however, prevent citizens from moving forward and instead lock them into their prior circumstances even when critical facts have changed.  This case concerns one such measure: the Centers for Disease Control and Prevention (the "CDC")'s sweeping, unilateral order imposing a national moratorium on residential property evictions for nonpayment of rent.

3.    Like forcing employers to continue paying wages to persons who no longer work for them, the eviction moratorium prohibits landlords from removing tenants who no longer pay rent to occupy a residence.

4.    The CDC's order includes criminal penalties if its terms are violated. The order provides for fines of $100,000 or more for individuals and $250,000 or

more for organizations.  Individuals who violate its terms also can be jailed for one year.  These draconian penalties produce an in terrorem effect—by design, they dissuade landlords from taking any steps that might be perceived to violate the CDC's order.

5.     The CDC predicates this unprecedented action on its statutory authority to prevent the interstate spread of disease, but that authority does not make the CDC the nation's landlord-in-chief any more than it places the CDC in charge of citizens' social media or the national minimum wage.  Were it otherwise, then Congress would have impermissibly turned over its lawmaking authority to an unelected administrative agency.  The United States Constitution and its nondelegation doctrine prevent Congress from doing so.  Indeed, the Constitution does not authorize Congress or the CDC to interfere with the purely local matter of tenants' occupancy of individual rental properties.

6.     Moreover, the eviction moratorium is ostensibly predicated on preventing the interstate spread of disease where state measures have failed to do so, but the CDC has failed to identify any evidence to support its assertion that prohibiting landlords from repossessing rental properties when tenants do not pay their rent stops the interstate spread of Covid-19 or is necessary due to the failings of state or local measures.  In addition, the CDC's commandeering of individual rental properties to house persons who cannot or will not pay rent for them

3

amounts to a taking without just compensation and unlawfully interferes with landlords' right of access to courts.

7.     Congress has spent trillions of dollars addressing Covid-19.  It could have provided landlords with direct assistance to address the severe and in some instances dire effects on landlords when tenants no longer pay rent but cannot be evicted for breaching their leases.  Congress chose not to do so.

8.     Despite this omission, the CDC, however, has attempted to arrogate to itself powers Congress did not give it and issued an order creating a nationwide eviction moratorium, twice extending that order.  The prospect of the CDC extending the order again is alarming.

9.     The CDC's order does not relieve landlords from their obligations to pay property taxes, make their own mortgage payments on rental properties, or provide maintenance and upkeep necessary to comply with applicable laws or regulations.

10.     Persons who are invoke the moratorium's protections are not relieved of their obligations to pay rent, but they may often be judgment proof, making the debt in many cases ultimately uncollectible.  In any event, one of the chief purposes of robust eviction laws, such as those found in Florida, is to avoid the toil and loss surrounding debt collection in favor of prompt dispossession of tenants who no longer uphold their end of the rental contract.

11.     Florida has approximately 2.7 million renter-occupied housing units, with an average monthly rental cost of approximately $1,200.   Landlords precluded from evicting tenants who breach their leases by nonpayment thus face thousands of dollars in damages in connection with just a single rental unit.  Those damages multiply as a landlord's number of affected units increases, and the overall losses from the eviction moratorium experienced by Florida's landlords may easily reach and exceed tens of millions of dollars.

12.     Some landlords, and some associations whose members are gravely impacted by these matters, have pursued judicial actions in other states to declare the eviction moratorium invalid.  Some of those challenges have not succeeded. Others have met with success at the trial court level, as district courts have recognized the unlawfulness of the CDC's actions, but the CDC has challenged each such ruling on appeal and has either successfully limited the challenges to the parties before the court or obtained a stay of the district court's ruling.

13.     As of the date of this filing, no order gives Florida landlords the relief they need to enforce their contractual rights and regain possession of property that is no longer actually being rented from them.  The moratorium's penalties are too severe for Florida landlords to act without clear guidance as to the eviction moratorium's unlawfulness.

14.     Accordingly, Florida Realtors and R.W. Caldwell bring this action to obtain a declaration that the CDC's eviction moratorium is, on multiple statutory and constitutional grounds, an unlawful and invalid exercise of government authority and therefore should be set aside.  Florida's landlords need and deserve relief from the eviction moratorium's terrorizing terms.

## The Parties

15.     Headquartered in Orlando, Florida, and organized under Section 501(c)(6) of the Internal Revenue Code, Plaintiff Florida Realtors is Florida's largest trade association.  It supports Florida's real estate industry in myriad ways, and its approximately 200,000 members make it the largest state association of Realtors® in the country.  Many Florida Realtors members lease residential properties to tenants and are detrimentally impacted by the CDC's eviction moratorium.

16.     Florida Realtors has standing to bring this action based on the financial harm and deprivation of property interests suffered by its members who own or manage residential rental properties in Florida (including within this district) and whom the CDC's eviction moratorium prohibits from evicting tenants despite their failure to pay rent in material breach of their lease agreements. Members in such circumstances have standing to bring suit in their own right.  The

interests at stake in this action are highly germane to the purpose of Florida Realtors, and the participation of individual members is not required.

17.     Plaintiff R.W. Caldwell is a fourth generation family real estate business located in Gulfport, Florida.  Its business activities include management of residential rental properties located in Pinellas County, Florida.

18.     For leased properties that R.W. Caldwell manages, it is the contracting party on the lease with the tenant.  R.W. Caldwell's role as property manager includes ensuring that rent payments are timely made and working with tenants who are behind on rent or otherwise not compliant with the lease terms. Where a tenant is in material breach of the lease, including for nonpayment of rent, R.W. Caldwell is authorized to bring an eviction proceeding on behalf of the property owner to repossess the property.

19.     Multiple tenants in R.W. Caldwell's Pinellas County properties have failed to pay rent and invoked the protections of the CDC's eviction moratorium to preclude R.W. Caldwell from exercising its state law contract and statutory rights to repossess those properties.  One tenant who has provided a declaration under the moratorium's terms has not paid rent for five months and is approximately $4,375 delinquent in rent.  Another tenant, who has informed R.W. Caldwell that any effort to evict will be countered by invocation of the eviction moratorium with a declaration, has not paid rent for three months and is

7

approximately $3,600 delinquent in rent.  But for the moratorium and its opprobrious penalties, R.W. Caldwell would have utilized legal remedies available under Florida law to repossess the properties ostensibly being rented by these tenants and other properties involving similar circumstances.

20.     One tenant at a property managed by R.W. Caldwell has completed a declaration to invoke the moratorium's protections and remains in the property without paying rent even though that tenant's lease has expired.  R.W. Caldwell is in serious doubt regarding its rights under these circumstances, including whether the moratorium encompasses not only tenants who have not paid rent toward an existing lease but tenants who hold over once their leases expire and continue not to pay rent.  R.W. Caldwell is facing similar circumstances with numerous tenants as the moratorium continues, leases expire, and tenants report that they cannot pay their rent and will invoke the moratorium if eviction proceedings are pursued.

21.     R.W. Caldwell has standing to bring this action because it has suffered and will continue to suffer significant injury due to the CDC's unlawful eviction moratorium.  If R.W. Caldwell complies with the moratorium, then it is not being paid rent it is owed by contract, with no realistic possibility it will be made whole by the tenant, and is forced to forego its right to evict nonpaying tenants while still being obligated to maintain the properties under state law.  If

R.W. Caldwell violates the moratorium, then it faces criminal penalties as set forth in the order.

22.     Defendant Centers for Disease Control and Prevention is an agency of the United States government and operates within the United States Department of Health and Human Services.  CDC is the agency responsible for the challenged agency action.

23.     Defendant Rochelle P. Walensky currently serves as Director of the CDC and is the agency head responsible for the challenged agency action.  She is sued in her official capacity.

24.     Defendant United States Department of Health and Human Services ("DHHS") is an agency of the United States government.

25.     Defendant Xavier Becerra currently serves as Secretary of DHHS.  He is sued in his official capacity.

26.     Defendant United States Department of Justice (the "DOJ") is an agency of the United States government.

27.     Defendant Merrick B. Garland currently serves as Attorney General of the United States.  He is sued in his official capacity.

**Jurisdiction and Venue**

28.     This case presents federal questions arising under the Constitution of the United States and federal statutory law, including the Administrative

Procedure Act.  The Court therefore has jurisdiction under 28 U.S.C. § 1331.  *See also* 5 U.S.C. § 702.

29.     This Court is authorized to grant declaratory relief and vacate the CDC's eviction moratorium order under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

30.     Venue is proper in the Middle District of Florida based on 28 U.S.C. § 1391(b)(2) and (e)(1)(B) and (C).

## Statement of Facts

31.     In March 2020, in response to the threats presented by Covid-19, Congress passed and President Trump signed a $2.2 trillion law titled the Coronavirus Aid, Relief and Economic Security Act (the "CARES Act").  *See* Pub. L. 116-136, 134 Stat. 281 (2020).

32.     Despite providing $2.2 trillion in various forms of economic relief, the CARES Act offered no financial assistance to residential tenants who could no longer afford to pay their rent.  Nor did it offer financial assistance to the landlords of such persons.  Instead, the CARES Act placed a 120-day nationwide moratorium on evictions from certain rental properties connected to federal rental assistance or loan programs.  § 4024.  That moratorium expired by its terms on July 24, 2020.

33.     On April 2, 2020, Florida Governor Ron DeSantis issued a statewide emergency executive order, No. 20-94, that suspended, for 45 days, evictions from

residential properties due to nonpayment of rent. The order predicated the suspension on a finding that the Covid-19 emergency had impacted the ability of many Floridians with residential tenancies to make their rent payments.

34. Governor DeSantis thereafter issued multiple orders that together extended the Florida eviction moratorium until October 1, 2020. *See* Fla. Gov. Ex. Ords. 20-121, 20-137, 20-159, 20-180, 20-211, available at https://www.flgov.com/covid-19-executive-orders/. Like the CARES Act moratorium, the Florida eviction moratorium is no longer in effect.

35. On August 8, 2020, President Trump issued an executive order directing the Secretary of DHHS and the Director of the CDC to consider whether measures temporarily halting residential evictions for failure to pay rent were reasonably necessary to prevent the spread of Covid-19. *See* 85 Fed. Reg. 49,935-36 (Aug. 8, 2020). The executive order expressed concern that the expiration of the CARES Act moratorium weeks earlier would "set off an abnormally large wave of evictions." *Id.*

36. On September 1, 2020, the CDC unilaterally issued an order entitled, "Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19." 85 Fed. Reg. 55,292 (Sept. 4, 2020), available at https://www.govinfo.gov/content/pkg/FR-2020-09-04/pdf/2020-19654.pdf (hereafter, the "Eviction Moratorium"). The Eviction Moratorium imposed a

national moratorium on residential evictions by prohibiting "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action" from evicting any person covered by the order's terms.  *Id.* at 55,292, 55,296.

37.     Under the Eviction Moratorium, "eviction" is defined to exclude foreclosures on residential mortgages.  *Id.* at 55,293.  Thus, the Eviction Moratorium prohibits landlords who own rental property from removing tenants who are no longer able to make their rental payments but does not prohibit those with mortgage interests in residential property from foreclosing those interests, selling the property, and dispossessing the owners if they are no longer able to make their mortgage payments.

38.     To invoke the Eviction Moratorium's protections, a tenant must submit a form declaration to the landlord affirming under penalty of perjury that he or she has (1) used best efforts to obtain all available government assistance for rent or housing; (2) expects to earn less than $99,000 in income in 2020, was not required to report any income in 2019 to the Internal Revenue Service, or received a stimulus check under the CARES Act; (3) is unable to pay the full rent or make a full housing payment due to substantial loss of income, loss of work or wages, a lay-off, or extraordinary medical expenses; (4) is using best efforts to make timely payments; (5) would likely become homeless or be forced to move into a shared

residence if evicted; (6) understands that rent obligations still apply; and (7) understands that the moratorium is scheduled to end on December 31, 2020. *Id.* at 55,297.

39.     The Eviction Moratorium's "Statement of Intent" identifies three objectives: (1) "Mitigating the spread of COVID-19 within congregate or shared living settings, or through unsheltered homelessness;" (2) "mitigating the further spread of COVID-19 from one U.S. State or U.S. territory into any other U.S. State of U.S. territory; and" (3) "supporting response efforts to COVID-19 at the Federal, State, local, territorial, and tribal levels."  *Id.* at 55,293.

40.     The Eviction Moratorium contains no findings and relies on no evidence to support its stated assertion that Covid-19 will spread between states or United States territories if landlords are permitted to exercise their contractual rights to evict tenants who fail to make rent payments as required by their leases.

41.     The Eviction Moratorium does not eliminate the renter's obligation to pay rent or prohibit interest charges on unpaid amounts.  *Id.* at 55,292.  Nor does it preclude evictions for reasons other than nonpayment of rent.  *Id.*

42.     The Eviction Moratorium does not apply in any state or local area with a moratorium on residential evictions that provides the same or greater level of "public-health protection" than the requirements listed in the CDC's order.  *Id.*

43.     Where the Eviction Moratorium applies, the stated penalties for its violation are severe.  The order states that a person violating its terms may be subject to a fine up to $100,000, or one year in jail, or both, if the violation does not result in a death, and up to $250,000, or one year in jail, or both, if the violation results in a death.  *Id.* at 55,296.  The order further states that an organization violating the eviction moratorium may be fined up to $200,000 per event if the violation does not result in a death or $500,000 per event if the violation results in a death.  *Id.*

44.     The Eviction Moratorium took effect immediately upon its publication on September 4, 2020.  *Id.* at 55,297.  The CDC did not provide notice regarding the order or solicit comments from the public.

45.     By its terms, the Eviction Moratorium was to expire on December 31, 2020.  *Id.*  However, Congress extended the Eviction Moratorium through January 31, 2021, through the Consolidated Appropriations Act.  Pub. L. No. 116-260, § 502, 134 Stat. 1182 (2020).

46.     On January 29, 2021, two days before the congressional extension expired, the CDC issued an order extending the Eviction Moratorium until March 31, 2021.  86 Fed. Reg. 8,020 (Feb. 3, 2021) (the "Initial Extension Order").  The Initial Extension Order supplemented the Eviction Moratorium's findings with a statement that "evictions substantially contribute to COVID-19 transmission."  *Id.*

at 8022.  The Initial Extension Order contains no findings of fact supporting this statement.

47.     On March 2021, Congress passed and President Biden signed into law the American Rescue Plan Act of 2021.  *See* Pub. L. 117-2, 135 Stat. 4 (2021).  It provides billions in funds that can be used for residential rent payments, but Congress did not direct those funds to be paid to landlords who cannot evict nonpaying tenants.  Rather, the funds are directed to States and local governments to assist tenants with their rental payments, and the funds will not be disbursed without a tenant's active involvement.  The American Rescue Plan Act of 2021 does not halt the CDC's Eviction Moratorium.

48.     On March 28, 2021, the CDC once again extended the Eviction Moratorium.  86 Fed. Reg. 16,731 (Mar. 31, 2021) (the "Second Extension Order").  Under the Second Extension Order, the Eviction Moratorium is set to expire on June 30, 2021.

49.     Plaintiffs are unaware whether the CDC will issue yet another order extending the Eviction Moratorium beyond June 30, 2021.

**Count I**
**CDC Exceeded Congress's Grant of Authority**

50.     Paragraphs 1 through 49 are incorporated into this count by reference, as if fully set forth herein.

15

51.     The CDC purportedly issued the Eviction Moratorium, and the First and Second Extension Orders, under the authority of Section 361 of the Public Health Service Act, 42 U.S.C. § 264, and a CDC regulation implementing that statute, 42 C.F.R. § 70.2.

52.     Section 361 provides no authority for the CDC Eviction Moratorium. Section 361 authorizes the Secretary of DHHS to "make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." 42 U.S.C. § 264(a). "For purposes of carrying out and enforcing such regulations," the Secretary of DHHS is authorized to "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.* Under settled principles of statutory construction, the "other measures" envisioned in the statute are measures like "inspection, fumigation, disinfection, sanitation, pest extermination, and so on, but government intrusion on property to sanitize and dispose of infected matter is different in nature from a moratorium on evictions. The Eviction Moratorium thus falls outside the scope of Section 361.

16

53.     Under 42 C.F.R. § 70.2, the Secretary of DHHS has delegated this authority to the Director of the CDC.  When the Director of the CDC determines that measures taken by any state or local jurisdiction health authorities are insufficient to prevent the spread of communicable disease, the Director of the CDC "may take such measure to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection."  42 C.F.R. § 70.2.  Here as well, the inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection authorized by 42 C.F.R. § 70.2 are radically unlike a moratorium on evictions.  In addition, interpreting the term "articles" to include evictions would stretch the term beyond its plain meaning.  Therefore, under settled principles of statutory construction, 42 C.F.R. § 70.2 provides no authorization for the Eviction Moratorium.

54.     Under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action" that is "found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ."  5 U.S.C. § 706(2)(C).

55.     The Eviction Moratorium exceeds the authority Congress granted to the Secretary of DHHS in § 361 (42 U.S.C. § 264), and the authority which the Secretary of DHHS granted to the Director of the CDC in 42 C.F.R. § 70.2.

56.     Accordingly, the Court should hold unlawful and set aside the Eviction Moratorium, as adopted and as thereafter extended.  It is the product of agency action unauthorized by Congress.

WHEREFORE, Plaintiffs demand judgment against all Defendants; a declaration and order that the Eviction Moratorium, as adopted and thereafter extended, is invalid, unlawful, and set aside; a permanent injunction prohibiting all Defendants from enforcing the Eviction Moratorium; awards of costs and attorney's fees under 28 U.S.C. § 2412 and any other applicable statute or authority; and any additional relief this Court deems just and proper.

**Count II**
**Violation of Nondelegation Doctrine**

57.     Paragraphs 1 through 49 are incorporated into this count by reference, as if fully set forth herein.

58.     This Count II is pled as an alternative to Count I.

59.     Under the nondelegation doctrine, Congress cannot transfer its legislative power to the executive branch, including to an agency of the United States government.

60.     To the extent the Eviction Moratorium comes within Congress's grant of authority under § 361 (42 U.S.C. § 264), such a broad grant of authority is insufficiently limited and therefore violates the nondelegation doctrine, the constitutionally mandated separation of powers, and Article I, Section 1, of the United States Constitution, which vests in the Congress all legislative powers granted by the Constitution.

61.     Under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action" that is "found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . ."  5 U.S.C. § 706(2)(C).

62.     Accordingly, the Court should hold the Eviction Moratorium, as adopted and thereafter extended, invalid and unlawful, and set it aside, under Article I, section 1, of the Constitution of the United States and the Administrative Procedure Act.

WHEREFORE, Plaintiffs demand judgment against all Defendants; a declaration and order that the Eviction Moratorium, as adopted and thereafter extended, is invalid, unlawful, and set aside; a permanent injunction prohibiting all Defendants from enforcing the Eviction Moratorium; awards of costs and attorney's fees under 28 U.S.C. § 2412 and any other any applicable statute or authority; and any additional relief this Court deems just and proper.

**Count III**
**Violation of Enumerated Powers**

63.     Paragraphs 1 through 49 are incorporated into this count by reference, as if fully set forth herein.

64.     This Count III is pled as an alternative to Counts I and II.

65.     The United States Constitution unites the States and creates a federal government system with three branches: legislative, executive, and judicial.

66.     Each branch may act only pursuant to its enumerated powers.

67.     Under the Constitution, and as confirmed by its Tenth Amendment, any power not delegated to the federal government by the Constitution or prohibited by Constitution to the States is reserved to States or to the people.

68.     Even if authorized by § 361 (42 U.S.C. § 264), the Eviction Moratorium, as originally adopted or thereafter extended, is not authorized by any power enumerated to the Congress or to the executive branch.  The power to interfere with private contracts between landlord and tenant, forcing a landlord to continue as such and prohibiting the landlord from exercising contractual and state-based rights to repossess property from nonpaying residential tenants who materially breach their lease agreements, is not contained within the Constitution and any enumerated power.

69.     Congress often acts under the Commerce Clause of Article I, Section 8, of the Constitution, but the Commerce Clause, even if combined with the

20

Necessary and Proper Clause, does not authorize the Eviction Moratorium as originally adopted or thereafter extended.  Regulating the eviction of residential tenants for nonpayment of rent is not the regulation of interstate commerce and is not the regulation of a channel of interstate commerce, an instrumentality of interstate commerce, or an activity that substantially affects interstate commerce.

70.     All States, including the State of Florida, regulate contracts and the residential landlord-tenant relationship in particular.

71.     Rather than tie its terms to a matter of interstate commerce subject to regulation under the Commerce Clause, or otherwise to a power enumerated under the Constitution, the Eviction Moratorium, as originally adopted and thereafter extended, interferes with matters reserved to and regulated by the States, including the State of Florida.

72.     Accordingly, the Eviction Moratorium, regardless of whether it is authorized by § 361 (42 U.S.C. § 264) or violates the nondelegation doctrine, represents an unconstitutional exercise of authority, unrooted in any enumerated power, including the Commerce Clause or the Commerce Clause combined with the Necessary and Proper Clause.

73.     Under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action" that is "found to be . . . contrary to constitutional right, power, privilege, or immunity . . . [or] in excess of statutory

jurisdiction, authority, or limitations, or short of statutory right . . . ."  5 U.S.C. § 706(2)(B)-(C).

74.     The Court should therefore hold the Eviction Moratorium, as adopted and thereafter extended, invalid and unlawful, and set it aside, as unauthorized by the Constitution and any enumerated power, including the Commerce Clause, or the Commerce Clause combined with the Necessary and Proper Clause, and any valid statutory authority.

WHEREFORE, Plaintiffs demand judgment against all Defendants; a declaration and order that the Eviction Moratorium, as adopted and thereafter extended, is invalid, unlawful, and set aside; a permanent injunction prohibiting all Defendants from enforcing the Eviction Moratorium; awards of costs and attorney's fees under 28 U.S.C. § 2412 and any other any applicable statute or authority; and any additional relief this Court deems just and proper.

### Count IV
### Arbitrary and Capricious Regulation

75.     Paragraphs 1 through 49 are incorporated into this count by reference, as if fully set forth herein.

76.     The Eviction Moratorium's prohibition on residential evictions for nonpayment of rent is arbitrary and capricious.  It is not a rational determination based on substantive evidence.  Indeed, the CDC has not identified any evidence

that residential evictions for nonpayment of rent actually spread Covid-19 from State to State or from States to territories.

77.    Furthermore, under the CDC's own regulations, its authority to act is limited to where measures taken by health authorities of any State or possession "are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession."  42 C.F.R. § 70.2.  Yet the CDC has made no findings of such insufficiencies, much less findings that all States' actions are insufficient to prevent the interstate spread of Covid-19, and has made no such rational determination based on substantive evidence.

78.    Under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action" that is "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  5 U.S.C. § 706(2)(A).

79.    The Court should therefore hold the Eviction Moratorium, as adopted and thereafter extended, invalid and unlawful, and set it aside, as its moratorium on residential evictions for nonpayment of rent is arbitrary and capricious.

WHEREFORE, Plaintiffs demand judgment against all Defendants; a declaration and order that the Eviction Moratorium, as adopted and thereafter extended, is invalid, unlawful, and set aside; a permanent injunction prohibiting all Defendants from enforcing the Eviction Moratorium; awards of costs and

attorney's fees under 28 U.S.C. § 2412 and any other any applicable statute or authority; and any additional relief this Court deems just and proper.

**Count V**
**<u>Denial of Access To Courts</u>**

80.     Paragraphs 1 through 49 are incorporated into this count by reference, as if fully set forth herein.

81.     The Constitution of the United States, including the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth and Fourteenth Amendment Due Process Clauses, and the Fourteenth Amendment Equal Protection Clause,  protects the right of persons to access courts to seek judicial relief for some wrong.

82.     Where a landlord has a right under state law to possess property because a tenant has failed to pay rent and thereby materially breached a lease agreement, the landlord may bring suit to recover possession of the premises.

83.     Under Florida law, a landlord is prohibited from recovering possession of a tenant-occupied residential rental property except through a civil action by which the right of possession is determined.  *See* Fla. St. § 83.59(3).

84.     Thus, with respect to a Florida rental property, the Eviction Moratorium precludes landlords from pursuing the only avenue legally available when a tenant fails to pay rent due on a residential lease.  Indeed, the Eviction Moratorium makes it a federal crime for landlords to exercise the only option

24

available to them under state law to recover their property: an action to retake possession.

85.     As such, the Eviction Moratorium unfairly and unjustly deprives Plaintiffs of their right of access to courts.

86.     Under the Administrative Procedure Act, a court must "hold unlawful and set aside agency action" that is "found to be . . . contrary to constitutional right, power, privilege, or immunity . . . ."  5 U.S.C. § 706(2)(B).

87.     The Court should therefore hold the Eviction Moratorium, as adopted and thereafter extended, invalid and unlawful, and set it aside, as contrary to the Constitution and the right of access to courts.

WHEREFORE, Plaintiffs demand judgment against all Defendants; a declaration and order that the Eviction Moratorium, as adopted and thereafter extended, is invalid, unlawful, and set aside; a permanent injunction prohibiting all Defendants from enforcing the Eviction Moratorium; awards of costs and attorney's fees under 28 U.S.C. § 2412 and any other any applicable statute or authority; and any additional relief this Court deems just and proper.

## Count VI
## Declaratory Relief Regarding Expired Leases

88.     Paragraphs 1 through 49 are incorporated into this count by reference, as if fully set forth herein.

89.     This Count VII is pled as an alternative to all preceding counts.

90.     If the Eviction Moratorium were a constitutional and wholly valid exercise of federal authority, then a substantial issue remains regarding the CDC order's application.  Specifically, Plaintiffs are uncertain regarding their rights to evict a tenant when the basis to do so is not the nonpayment of rent but that the tenant's lease has expired consistent with its terms.

91.     The Eviction Moratorium is predicated on the notion that the person not paying rent has a valid lease.  Indeed, the declaration that a tenant must provide to invoke the moratorium's protections expressly states: "You are still required to pay rent and follow all the other terms of your lease and rules of the place where you live.  You may also still be evicted for reasons other than not paying rent or making a housing payment."  85 Fed. Reg. 55,297.

92.     Where a lease has come to an end by its terms, including where either party chooses not to renew the lease, then a lease is no longer in effect.

93.     Thus, evicting a person whose lease has expired and therefore no longer has a valid lease should not violate the terms of the Eviction Moratorium.

94.     Nonetheless, former tenants such as those living in properties managed by R.W. Caldwell have continued to invoke the Eviction Moratorium's terms, remain in the unit, and not pay rent, as if the lease had not expired.

95.     The criminal penalties for violating the Eviction Moratorium, including jail for individuals and hundreds of thousands of dollars in fines for

individuals and corporations, are excessive and grossly punitive, and the threat of such prosecution precludes Plaintiffs and others from proceeding with good faith eviction proceedings in the context of expired leases in the face of the moratorium's invocation.

96.    Accordingly, Plaintiffs are entitled to a declaration that the Eviction Moratorium does not preclude a person from proceeding with an eviction on grounds the parties' lease has expired once the lease expires consistent with its terms.

WHEREFORE, Plaintiffs demand judgment against all Defendants; a declaration and order that the Eviction Moratorium, as adopted and thereafter extended, does not preclude proceeding with an eviction on grounds the parties' lease has expired once the lease expires consistent with its terms; awards of costs and attorney's fees under 28 U.S.C. § 2412 and any other any applicable statute or authority; and any additional relief this Court deems just and proper.

Dated:  May 17, 2021

/s/ Matthew J. Conigliaro
Matthew J. Conigliaro (FBN 63525)
mconigliaro@carltonfields.com
D. Matthew Allen (FBN 866326)
mallen@carltonfields.com
CARLTON FIELDS, P.A.
4221 W. Boy Scout Blvd., Suite 1000
Tampa, FL 33607
Telephone:  (813) 229-4254

*Attorneys for Plaintiffs Florida Association of Realtors, Inc. and R.W. Caldwell, Inc.*

David C. Gibbs, III (FBN 992062)
dgibbs@gibbsfirm.com
GIBBS LAW FIRM, P.A.
P.O. Box 5076
Largo, FL 33779
Telephone:  (727) 362-3700

*Attorneys for Plaintiff R.W. Caldwell*